# UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF LOUISIANA

### SHREVEPORT DIVISION

LEROY BROWN                                     CIVIL ACTION NO. 09-1477-P

VERSUS                                          JUDGE WALTER

JAMES LEBLANC, ET AL.                           MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

This matter has been referred to the undersigned magistrate judge for review, report and recommendation in accordance with 28 U.S.C. §636(b)(1)(B).

## STATEMENT OF CLAIM

Before the court is a civil rights complaint filed in forma pauperis by pro se plaintiff Leroy Brown ("Plaintiff"), pursuant to 42 U.S.C. § 1983.[1] This complaint was received and filed in this court on August 18, 2009.  Plaintiff is incarcerated at the David Wade Correctional Center in Homer, Louisiana.  He claims his civil rights were violated by prison officials and inmates.  He names James LeBlanc, Jerry Goodwin, Earl Benson, Antonio Turner, Michael Robinson, Reginald Jackson, Linda Ramsey, Frank Reich, Colonel James Arnold and inmates Randall Basko, Shannon Stewart, Johnnie Johnson, Edward Timmons, Jimmie Peck, Leon Horne, Frederick Harris, Terrance Prudhomme, and Kerry Wasksom as defendants.

_____

[1]Plaintiff filed additional claims regarding violations of his constitutional rights. These claims were labeled in the court's June 4, 2010 Memorandum Order as Claim #6 and Claim #12.  Claim # 12 and part of Claim #6 have been addressed in a separate Memorandum Order.

**Claim #1**

Plaintiff, a black inmate, claims Lt. Col. Earl Benson, with the approval of Warden Jerry Goodwin, organized a racist and retaliatory attack against him because he has reported their actions to authorities in the past.  He claims Benson and Goodwin conspired with a clan of racist inmates and promised them favors if they attacked him. Specifically, he claims inmate Johnnie Johnson was allowed to steal his hobby craft materials and sell some of the items to Sgt. Edward Durham, a black employee.  Plaintiff claims that on April 20, 2009, he and Sgt. Durham reported the stolen items to Lt. Col. Turner.  Plaintiff claims Turner, acting on orders from Goodwin and Benson, concealed the illegal acts of inmate Johnnie Johnson.

Plaintiff claims Goodwin, Benson, Turner, and Michael Robinson are guilty of the crime of misprision of felony regarding the crimes committed by inmate Johnnie Johnson and violations of his equal protection rights.  Plaintiff claims that through letters he informed Goodwin and Turner about the actions of inmate Johnnie Johnson.  He also claims that he filed a grievance in the administrative remedy procedure regarding the incident.

Plaintiff claims he informed FBI Special Agent Frank Reich that Goodwin and Benson would continue their abuse of him if criminal charges were not pursued and/or actions taken to halt their activities.

**Claims #2 and #5**

Plaintiff claims that on May 13, 2009, he wrote Goodwin regarding crimes being

committed by inmates Basko, Peck, and Timmons.  He claims he requested that the letter/grievance be given a control number.  He claims that pursuant to DOC rules, the warden must give an inmate's letter a control number and respond to it within ten days. Plaintiff claims his letter was not given a control number. Plaintiff provides the court with a copy of a grievance filed in the administrative remedy procedure which was rejected as unclear because it did not specify when the plot occurred.  Plaintiff claims the rejection was not justified because the grievance was clear.

Plaintiff claims inmates Basko, Peck, and Timmons worked with Goodwin, Benson, and Turner to victimize him.  He claims that when he notified Goodwin about these inmates' actions, Goodwin, Benson, and Turner engaged in plots to conceal the crimes/violations.  Plaintiff claims Defendants failed to notify the authorities of these crimes.

Plaintiff claims that for 12 years, Benson and Goodwin attacked him for racial and/or retaliatory reasons.  Plaintiff claims Captain Reggie Jackson, who is black, was ordered by Goodwin, Benson, and Turner to issue him a false disciplinary report  for contraband.  He claims one of the items confiscated was a glue brush.  Plaintiff argues the glue brush was not contraband because it was on his inventory list and was not altered into an eyelet setter.  He claims Turner, Goodwin, and Benson took steps to conceal the fabrication of the disciplinary report and find him guilty.  He claims Goodwin was aware of the criminal conduct and helped to conceal the crime.

Plaintiff claims Defendants are guilty of the crimes of misprision of felony, obstruction of justice, injuring public records, filing or maintaining false public records, malfeasance in office, and criminal conspiracy.  Plaintiff claims Goodwin, Benson, and Turner violated his right to equal protection when they committed the criminal act of misprision of felony.

**Claim #3**

Plaintiff claims that approximately six years ago, then Warden Venetia Michael, Assistant Warden Jerry Goodwin, and Captain Earl Benson conspired to have him placed on lock-down and physically injured.  He claims Agent Reich investigated these and numerous other crimes committed against him.  Plaintiff claims Agent Reich had a stern talk with Warden Michael.

Plaintiff claims Goodwin and Benson had false disciplinary reports filed and sanctions imposed against him because he is black and because he reported numerous crimes at David Wade Correctional Center to the FBI, the Louisiana State Police, an assistant district attorney, a federal judge, a sheriff's office, and other agencies.  Plaintiff claims that in order to hide their racist motives, Goodwin and Benson used black employees to issue the false disciplinary reports against him.

Plaintiff claims that on March 12, 2009, Turner, who is black, ordered Robinson, who is black, to issue him a false disciplinary report for general prohibited behavior. Plaintiff claims Turner conspired with Goodwin and Benson to chair the disciplinary board hearing held on March 24, 2009 to give the impression of impartiality and

credibility.  Plaintiff claims Turner lied in the report when he stated that Robinson testified at the hearing.  Plaintiff claims Turner is guilty of violating Louisiana criminal law because he filed false public records and committed malfeasance in office.  Plaintiff claims Benson and Goodwin are guilty of malfeasance in office, filing false public records, and misprision of felony.

Plaintiff claims that when he was placed in administrative segregation on March 12, 2009, his hobby craft supplies were stolen.  He claims his supplies were confiscated without compensation.  He claims the theft was a racist and retaliatory act.

Plaintiff claims Reich was repeatedly informed that measures should be taken to halt the criminal activity at David Wade Correctional Center.

**Claim #4**

Plaintiff claims he was denied due process in the prison disciplinary proceeding regarding his charge for general prohibited behavior.  He claims Turner chaired the disciplinary board and conducted the investigation of the charge with Robinson. Plaintiff claims Turner should have been recused from the disciplinary board because he was biased.  He claims Turner conspired with Goodwin and Benson.  He claims Goodwin and Benson took statements from the racist inmates.  He claims Turner ordered Robinson to falsify the disciplinary report.

Plaintiff claims Assistant Warden Huff denied the appeal of his disciplinary conviction and sanction.  He claims Secretary LeBlanc rejected his appeal as moot because his sanction of loss of 12 weeks yard/recreation privileges is not appealable.

Plaintiff claims Goodwin, Benson, and Turner have not answered his inquiries regarding racism, constitutional violations, and criminal violations.  He further claims Goodwin, Benson, and Turner knew that LeBlanc would not consider his appeal because the sanction was not appealable.

**Claim #6[2]**

Plaintiff claims Goodwin openly practices racist, discriminatory policies against black employees.  Plaintiff claims that since 1999, no black employees have been allowed to live in the five homes provided by the Department of Corrections for residential use.  He claims that if the employees complain, Goodwin will retaliate against them by suspending or terminating them.  He claims LeBlanc is aware of the racist policies at David Wade Correctional Center.

**Claim #7**

Plaintiff claims Goodwin, Benson, and Turner abuse the administrative remedy procedure in violation of his right to due process and his right to equal protection.  He claims he filed a grievance on January 22, 2009, and that this grievance was accepted on January 27, 2009.  He claims the respondent, which was Turner, had 40 days to respond to his grievance.  He claims he did not receive a response until June 30, 2009. He further claims Turner lied in his response.  He claims lying in responses is a common practice.  Plaintiff claims LeBlanc denied his grievance.

---

[2]Plaintiff also raised as part of this claim that his equal protection rights were violated.  This part of Claim #6 has been addressed in a separate Memorandum Order.

**Claim #8**

Plaintiff claims Benson and Goodwin have a history of injuring him through their criminal misconduct and actions. He claims their actions violate his right to equal protection. He claims that he was interviewed twice by FBI agents who then spoke with Warden Michael.  He claims his issues were resolved until Warden Michael retired.

Plaintiff claims that approximately one year ago, Benson conspired with an inmate to physically attack him.  He claims inmate Terrance Prudhomme trained for the attack but never worked up the nerve to attack him.  He claims Prudhomme instead attacked his friend in a fit of rage.

Plaintiff claims Reich was warned about Goodwin and Benson.

**Claim #9**

Plaintiff claims that in 1997 or 1998, Benson caught inmate Teague using a computer to access child pornography.  He claims inmate Teague was placed on administrative segregation while on lock-down.  He claims the next day inmate Teague was released from administrative segregation and a disciplinary report was never filed. Plaintiff claims the computer was removed to conceal the crime.

Plaintiff claims that in 2002, Benson wrote a false disciplinary report against inmate Robert Hallel which was later dismissed.  He claims Benson tried to convince him to physically attack inmates Robert Hallel and Rodney Jones.

Plaintiff claims that in 2006, Benson used inmates Prudhomme, Horne, and others to try to have him placed on lock-down for false disciplinary reports.  He claims that

when this failed, Benson worked with inmate Jones to have him receive bodily harm.

Plaintiff claims Benson tried multiple times to have Sgt. Dimaree issue him false disciplinary reports.

Plaintiff claims  Benson conspired with inmate Henry Hinton to have him written up on false disciplinary reports and to steal his property.  He claims inmate  Hinton was caught with his stolen property and did not receive a disciplinary report.

Plaintiff claims his right to equal protection and his right to due process were violated when Benson, Turner, and Arnold conspired with inmates Waskom and Horne to issue a false disciplinary report against him in order to intimidate him and retaliate against him.  Plaintiff further claims Arnold violated his equal protection and due process rights when he participated in the investigation and disciplinary hearing.

**Claim #10**

Plaintiff claims that on January 16, 2009, Benson and inmates Peck and Basko violated his equal protection rights when they attempted to have him placed on lock-down in order to receive disciplinary reports.

Plaintiff claims that on January 19, 2009, Arnold and Goodwin violated his equal protection and due process rights when they denied him release from the working cell block.  He claims no reasons were given during his review board hearing.  He further claims that it is a Department of Corrections requirement that written reasons be given for a denial.

**Claim #11**

Plaintiff claims Goodwin, Turner, and Arnold have conspired to steal his property.  He claims the items stolen included one Sony walkman, three pairs of reading glasses, one pair of sunglasses, two belts, one pair of headphones, and a roll of leather. He claims Defendants' actions violated his equal protections rights.

Accordingly, Plaintiff seeks injunctive relief to stop the criminal actions and retaliation by Defendants, an investigation by the F.B.I., and punitive, compensatory, and all other appropriate damages.

## LAW AND ANALYSIS

**CLAIM # 1**

**Retaliation**

Plaintiff claims Defendants Lt. Col. Earl Benson and Warden Jerry Goodwin organized a racist attack against him by inmate Johnnie Johnson in retaliation for his reporting their actions to authorities in the past.  Specifically, he claims inmate Johnson was allowed to steal his hobby craft materials.  To state a claim of retaliation, an inmate must allege the violation of a specific constitutional right and be prepared to establish that but for the retaliatory motive the complained of incident--such as the theft of his personal property--would not have occurred. Woods v. Smith, 60 F.3d 1161 (5th Cir. 1995), citing Mt. Healthy City School Board District Bd. Of Education v. Doyle, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

Plaintiff's allegations that he was retaliated against by Defendants Benson and

Goodwin are unconvincing. The retaliatory motive alleged by Plaintiff is entirely conclusory as he provides no evidence that "but for" this motive, his property would not have been stolen by another inmate.  Accordingly, these actions by prison officials do not implicate any constitutional rights.

**Equal Protection**

Plaintiff claims Goodwin, Benson, Turner, and Michael Robinson violated his equal protection rights.  A Section 1983 plaintiff has long been required to plead his case with "factual detail and particularity," not mere conclusory allegations.  Elliot v. Perez, 751 F.2d 1472, 1473 (5th Cir. 1985); Hale v. Harney, 786 F.2d 688 (5th Cir. 1986).  The Supreme Court has abolished this heightened pleading standard for claims against municipalities, Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 113 S.Ct. 1160 (1993), but the requirement remains firmly in place for claims against individual public officials.  See Schultea v. Wood, 47 F.3d 1427 (5th Cir.1995) (en banc).

In this case, Plaintiff has named individual prison officials as defendants and is therefore required to give factual details regarding his alleged constitutional rights violations.  Plaintiff has failed to do so.  Accordingly, these claims should be dismissed for failure to state a claim on which relief may be granted.

**Misprision of Felony**

Plaintiff claims defendants Goodwin, Benson, Turner, and Michael Robinson are guilty of the crime of misprision of felony regarding the alleged crimes committed by

inmate Johnnie Johnson.  Specifically, he claims Turner, acting on orders from Goodwin and Benson, concealed the illegal acts of inmate Johnson.  He claims he informed Goodwin and Turner about the actions of inmate Johnson and filed a grievance in the administrative remedy procedure.

The claim that Defendants are guilty of misprision of felony is criminal in nature. Plaintiff does not have standing to sue Defendants for alleged criminal acts unless these acts also violate a federal statute that gives rise to a federal action.  Gilbert v. Bartel, 2007 WL 1112594 (N.D. Tex. 4/12/07).  As discussed above, Plaintiff has failed to show that his constitutional rights were violated by the actions of Defendants.  Accordingly, Plaintiff lacks standing as to this claim and it should be dismissed without prejudice.

**CLAIMS #2 and #5**

**Grievance Procedure**

Plaintiff complains his May 13, 2009 grievance was not given a control number and was rejected in violation of his constitutional rights.  Inmates do not have a constitutionally protected right to a prison administrative grievance procedure.  See Oladipupo v. Austin, et al., 104 F.Supp.2d 626 (United States District Court, Western District of Louisiana 4/24/00); Brown v. Dodson, et al., 863 F. Supp. 284 (United States District Court, Western District of Virginia 6/2/94); Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991).  A prison official's failure to comply with a state administrative grievance procedure is not actionable under Section 1983 because a state administrative grievance procedure does not confer any substantive constitutional right upon prison inmates.

Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988), cert. denied, 488 U.S. 898, 109 S.Ct. 242, 102 L.Ed.2d 231.   Furthermore, state administrative grievance procedures are separate and distinct from state and federal legal procedures.   Thus, a prison official's failure to comply with state administrative grievance procedures does not compromise an inmate's right of access to the courts.   Flick, supra.   Thus, insofar as Plaintiff alleges that the Defendants failed to comply with the prison administrative grievance procedure, those allegations, standing alone, do not provide an arguable basis for recovery under Section 1983.   Accordingly, this claim should be dismissed with prejudice as frivolous.

**False Disciplinary Report**

To the extent Plaintiff claims that he was issued a false disciplinary report by Captain Jackson for contraband, Plaintiff has no right which protects him from being charged with a disciplinary offense.   This is true regardless of the truth of the initial report.   Freeman v. Rideout, 808 F.2d 949, 952 (2nd Cir. 1986); Hanrahan v. Lane, 747 F.2d 1137, 1140-41 (7th Cir. 1984); Cardine v. Tucker, 23 F.3d 406 (Table), 1994 U.S. App. LEXIS 17566 (6th Cir. 1994).   Accordingly, in the instant case, even if the actions of Defendants resulted in false disciplinary action being taken against him, Plaintiff's claim against them is not cognizable because he has no constitutional protection from being wrongly charged with a disciplinary offense.   Accordingly, Plaintiff's claims regarding false disciplinary reports should be dismissed with prejudice as frivolous.

**Heck**

Plaintiff claims he was issued a false disciplinary report for contraband.  He claims that during his disciplinary hearing, Turner, Goodwin, and Benson took steps to conceal the fabrication of the disciplinary report and find him guilty.  He further claims Goodwin was aware of the criminal conduct and helped to conceal the crime.  He claims Defendants are guilty of the crimes of misprision of felony, obstruction of justice, injuring public records, filing or maintaining false public records, malfeasance in office, and criminal conspiracy.

Plaintiff is seeking monetary damages, injunctive relief, and a declaratory judgment for an allegedly unconstitutional disciplinary board conviction and sentence. The United States Supreme Court held that in order to recover damages for an allegedly unconstitutional conviction or sentence or for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid," a prisoner must show that the conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas." Heck v. Humphrey, 512 U.S. 477, 486-87, 114 S.Ct. 2364, 2372 (1994).

Courts have also extended the holding in Heck to claims seeking injunctive or declaratory relief pursuant to 42 U.S.C. § 1983.  See Edwards v. Balisok, 520 U.S. 641,648, 117 S.Ct. 1584, 1589, 137 L.Ed.2d 906 (1997); Clark v. Stalder, 154 F.3d 186, 190-91 (5th Cir. 1998).  Heck involved a civil rights claim brought by a state prisoner.

The Court dismissed the Section 1983 suit until plaintiff could demonstrate that his conviction or sentence had been invalidated.  In Edwards v. Balisok, supra, the Supreme Court approved the application of the Heck doctrine to prison disciplinary proceedings.

When a claim comes within the parameters of the Heck teachings, it is not cognizable under 42 U.S.C. § 1983 so long as the validity of the conviction or sentence has not been called into question as defined therein, which requires dismissal of claims not meeting its preconditions for suit.  See Johnson v. McElveen, 101 F.3d 423, 424 (5th Cir. 1996).

Plaintiff is seeking monetary damages and injunctive and declaratory relief for civil rights violations under Section 1983; therefore, he must prove that his disciplinary board conviction or sentence has been invalidated.  He has not met this precondition and his claim must be dismissed until such time that he can demonstrate that his disciplinary board conviction or sentence has been invalidated.

**Retaliation**

Plaintiff claims Defendants Lt. Col. Earl Benson and Warden Jerry Goodwin attacked him for racial and/or retaliatory reasons and conspired with inmates to victimize him and conceal their crimes/violations.  Specifically, he claims he was issued a false disciplinary report for contraband.  To state a claim of retaliation, an inmate must allege the violation of a specific constitutional right and be prepared to establish that but for the retaliatory motive the complained of incident--such as the disciplinary report for contraband--would not have occurred.  Woods v. Smith, 60 F.3d 1161 (5th Cir. 1995),

citing Mt. Healthy City School Board District Bd. Of Education v. Doyle, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

Plaintiff's allegations that he was retaliated against by Defendants Benson and Goodwin are unconvincing. The retaliatory motive alleged by Plaintiff is entirely conclusory as he provides no evidence that "but for" this motive, he would not have been written up for contraband.   Accordingly, these actions by prison officials do not implicate any constitutional rights.

**Equal Protection**

Plaintiff claims Goodwin, Benson, and Turner violated his equal protection rights when they committed the criminal act of misprision of felony.  A Section 1983 plaintiff has long been required to plead his case with "factual detail and particularity," not mere conclusory allegations.  Elliot v. Perez, 751 F.2d 1472, 1473 (5th Cir. 1985); Hale v. Harney, 786 F.2d 688 (5th Cir. 1986).  The Supreme Court has abolished this heightened pleading standard for claims against municipalities, Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 113 S.Ct. 1160 (1993), but the requirement remains firmly in place for claims against individual public officials. See Schultea v. Wood, 47 F.3d 1427 (5th Cir.1995) (en banc).

In this case, Plaintiff has named individual prison officials as defendants and is therefore required to give factual details regarding his alleged constitutional rights violations.  Plaintiff has failed to do so. Accordingly, these claims should be dismissed for failure to state a claim on which relief may be granted.

**CLAIM #3**

**Heck**

Plaintiff claims that on March 12, 2009, he was issued a false disciplinary report. He claims Turner violated Louisiana criminal law because he filed false public records and committed malfeasance in office.  He claims Benson and Goodwin are guilty of malfeasance in office, filing false public records, and misprision of felony.

Plaintiff is seeking monetary damages and injunctive and declaratory relief for civil rights violations under Section 1983; therefore, he must prove that his disciplinary board conviction or sentence has been invalidated. Heck, supra.  He has not met this precondition and his claim must be dismissed until such time that he can demonstrate that his disciplinary board conviction or sentence has been invalidated.

**False Disciplinary Report**

To the extent Plaintiff again claims he was issued false disciplinary reports, Plaintiff has no right which protects him from being charged with a disciplinary offense. Freeman, supra.  Accordingly, Plaintiff's claims regarding false disciplinary reports should be dismissed with prejudice as frivolous.

**Retaliation**

Plaintiff claims Goodwin and Benson had false disciplinary reports filed and sanctions imposed against him because he is black and because he reported numerous crimes at David Wade Correctional Center to authorities.  Plaintiff's allegations that he was retaliated against are unconvincing.  The retaliatory motive alleged by Plaintiff is

entirely conclusory as he provides no evidence that "but for" this motive, he would not have been charged with a rule violation.  <u>Woods</u>, <u>supra</u>.  Furthermore, he does not deny that the incident occurred.  Accordingly, these actions by Defendants do not implicate any constitutional rights and should be dismissed with prejudice as frivolous.

**Discrimination**

Plaintiff claims Goodwin and Benson had false disciplinary reports filed and sanctions imposed against him because he is black.  Because Plaintiff named individual prison officials as defendants, he is required to give factual details regarding his alleged constitutional rights violations.  <u>Elliot</u>, <u>supra</u>.  Plaintiff has failed to do so. Accordingly, these claims should be dismissed for failure to state a claim on which relief may be granted.

**Property Claim**

Plaintiff filed this claim pursuant to 42 U.S.C. § 1983 of the Civil Rights Act which provides redress for persons "deprived of any rights, privileges or immunities secured by the Constitution or laws of the United States" by a person acting under color of state law.  Accordingly, the initial inquiry and threshold concern of the reviewing court is whether Plaintiff's constitutional rights have been violated.  <u>See</u> <u>Parratt v. Taylor</u>, 451 U.S. 527, 107 S. Ct. 1908 (1981).

The property of which Plaintiff was allegedly deprived can constitute "property" within the meaning of the Due Process Clause of the Fourteenth Amendment and its loss is worthy of redress if the loss implicates constitutional rights.  <u>See id</u>. at 542, 107 S. Ct.

at 1916.   However, the Fourteenth Amendment is not a font of tort law to be superimposed upon whatever systems may already be administered by the States.  See Baker v. McCollan, 433 U.S. 137, 99 S. Ct. 2689 (1979).  A constitutional deprivation of property without due process of law, as differentiated from a state tort law claim, must be intentional and plaintiff must allege specific facts which support such a conclusion.

Absent an intentional deprivation of property where the charge only supports a negligent failure by defendants, a constitutional deprivation does not lie.  "[T]he Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty or property."  Daniels v. Williams, 474 U.S. 327, 328, 106 S. Ct. 662, 663 (1986).  Moreover, even in instances where intentional deprivation occurs where an adequate state post-deprivation remedy is available, the Due Process Clause is not implicated.  See Hudson v. Palmer, 468 U.S. 517, 533, 104 S.Ct. 3194, 3204 (1984), on remand, 744 F.2d 22 (4th Cir. 1984); Marshall v. Norwood, 741 F.2d 761, 764 (5th Cir. 1984).  Mere assertions of intentionality are not enough in the absence of specific facts supporting the assertions and "even if the taking were intentional, the state could afford the [plaintiff] due process by providing a post-deprivation remedy for the redress of the unforeseeable, unauthorized injury... alleged." Lewis v. Woods, 848 F.2d 649, 652 (5th Cir. 1988).  Louisiana law provides Plaintiff the opportunity to seek redress for his loss, whether intentional or negligent.  See La. Civ. Code art. 2315.  Accordingly, Plaintiff has failed to state a claim cognizable under Section 1983.

**CLAIM #4**

**Due Process Claim**

Plaintiff claims he was denied due process in the prison disciplinary proceeding regarding his charge for general prohibited behavior.  To the extent Plaintiff contends he was punished without due process, that claim is not cognizable.  In <u>Sandin v. Connor</u>, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the Supreme Court clarified when due process protections attach to the prison disciplinary process.  The Supreme Court held that the Due Process Clause of the Fourteenth Amendment does not afford an inmate a protected liberty interest that would entitle the inmate to procedural protections in the disciplinary process when the maximum sanction the inmate could receive does not "present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest" and the duration of the prisoner's original sentence is not affected.  <u>Id</u>. 132 L.Ed.2d at 431.  Under the guidance provided by <u>Sandin</u>, the Fifth Circuit has held that as a general rule, only sanctions which result in loss of good time credit or which otherwise directly and adversely affect release will implicate a constitutionally protected liberty interest.  <u>Orellana v. Kyle</u>, 65 F.3d 29, 31-32 (5th Cir. 1995).  Moreover, in commenting on <u>Sandin</u>, the Fifth Circuit noted that liberty interests which are protected by the Due Process Clause are generally limited to actions which affect the quantity of time rather than the quality of time served by a prisoner.  <u>Madison v.  Parker</u>, 104 F.3d 765, 767 (5th Cir. 1997) citing <u>Sandin</u>, 115 S.Ct.  at 2297.

Plaintiff does not allege that the disciplinary actions affected the duration of his

sentence or that the disciplinary sentences were atypical of the prison environment.  To the contrary, Plaintiff's allegations concern changes in the conditions of confinement which are far from "extraordinary."  This Court finds that under <u>Sandin</u>, <u>Orellana</u> and <u>Madison</u>, 12 weeks loss of yard/recreation privileges does not constitute the type of atypical punishment that presents a significant deprivation which would implicate due process concerns.  Hence, Plaintiff's claim that he was punished without due process of law is without merit.  Accordingly, Plaintiff's claims regarding due process in the prison disciplinary proceedings should be dismissed with prejudice as frivolous.

**CLAIM #6**

**Standing**

As a threshold matter, this court must consider 's standing to bring claims regarding alleged racial discrimination suffered by employees of David Wade Correctional Center.  The requirement that a litigant have standing to institute litigation in federal court emanates from two sources: (1) Article III of the United States Constitution; and (2) court-imposed "prudential considerations." <u>Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.</u>, 454 U.S. 464, 471, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982). If Plaintiff lacks standing, this Court does not have authority to consider the merits of these claims.

Under Article III, jurisdiction of the federal courts is confined to "cases" and "controversies." U.S. Const. art. III, § 2.  The irreducible constitutional minimum of standing contains three elements. <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560-61,

112 S.Ct. 2130, 2136-37, 119 L.Ed.2d 351, 361 (1992). First, the plaintiff must have suffered an "injury in fact"--an invasion of a legally-protected interest which is (a) concrete and particularized; and (b) "actual or imminent, not 'conjectural' or 'hypothetical.' " Id. Second, there must be a causal connection between the injury and the aggrieving conduct. The injury has to be "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." Id.  Third, it must be "likely," as opposed to merely "speculative," that the injury will be redressed by a favorable decision.  Id.

Prudential considerations which have been incorporated into the standing analysis include "the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked." Allen v. Wright, 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984).

The party invoking federal jurisdiction carries the burden of establishing the elements for standing.  Defenders of Wildlife, 504 U.S. at 561, 112 S.Ct. at 2136.  In determining standing, the Court does not consider the ultimate merits of the suit. Hanson v. Veterans Admin., 800 F.2d 1381, 1385 (5th Cir.1986).  See Hutchinson v. Belt, et al., 957 F.Supp. (W. D. La. 1996).

This court finds that Plaintiff lacks standing to bring claims regarding racial discrimination suffered by David Wade Correctional Center employees.  As a result of

the alleged racial discrimination suffered by the employees, Plaintiff has no legally protected interest and has suffered no injury in fact.  Accordingly, Plaintiff's claims should be dismissed without prejudice.

**CLAIM #7**

**Administrative Remedy Procedure**

Plaintiff claims Goodwin, Benson, and Turner abused the administrative remedy procedure in violation of his right to due process and his right to equal protection.  As explained above, inmates do not have a constitutionally protected right to a prison administrative grievance procedure.  Oladipupo, supra.  Thus, insofar as Plaintiff alleges that Defendants failed to comply with the prison administrative grievance procedure, those allegations, standing alone, do not provide an arguable basis for recovery under Section 1983.  Accordingly, this claim should be dismissed with prejudice as frivolous.

**CLAIM  #8**

**Inmate Attack Claim**

Plaintiff claims that approximately one year ago, Benson conspired with an inmate to attack him but admits that the inmate did not attack him.  Again, Plaintiff has named individual prison officials as defendants and is therefore required to give factual details regarding his alleged constitutional rights violations.  Elliot, supra.  Plaintiff has failed to do so.  Accordingly, these claims should be dismissed for failure to state a claim on which relief may be granted.

**CLAIM #9**

**Prescription**

In <u>Wilson v. Garcia</u>, 471 U.S. 261 (1985), the Court articulated the guidelines to be used in determining what prescriptive period should apply to Section 1983 claims. The Court determined "§ 1983 claims are best characterized as personal injury actions" and the forum state's statute of limitations applicable to such claims should be used. <u>Id</u>. at 280.   In <u>Gates v. Spinks</u>, 771 F.2d 916 (5th Cir. 1985), the Fifth Circuit Court of Appeals phrased the test as:  "The state statute governing the general tort remedy for personal injuries should apply to 1983 actions . . ." <u>Gates</u>, 771 F.2d at 919.

The Louisiana Civil Code provides a general prescriptive statute that governs tort actions.  The article subjects delictual actions to a liberative prescription of one year. <u>See</u>  La. C.C. art. 3492.  The Fifth Circuit qualified this prescriptive period, however, when it held that "a section 1983 action accrues and the statute of limitations begins to run when the plaintiff knows or has reason to know of the injury which is the basis for the action." <u>Watts v. Graves</u>, 720 F.2d 1416, 1417 (5th Cir. 1983).  Finally, prescription on the claim is tolled while the administrative remedy procedure is pending.  <u>See Harris v. Hegmann</u>, 198 F.3d 153 (5th Cir. 1999).

Plaintiff claims that in 1997 or 1998, Benson concealed a crime committed by inmate Teague.  Plaintiff claims that in 2002, Benson tried to convince him to physically attack two other inmates.  Plaintiff claims that in 2006, Benson used inmates to have him placed on lock-down for false disciplinary reports and worked with an inmate to inflict

bodily harm on him.

Thus, prescription began to run as to these claims in 1998, 2002, and 2006 at the latest when each complained of incident occurred.  The above entitled and numbered complaint was not signed by Plaintiff until August 2009 and it was not filed by the Clerk of Court until August 18, 2009.  Plaintiff's claims are therefore prescribed.  Accordingly, Plaintiff's civil rights claims should be dismissed as frivolous.

**False Disciplinary Report**

Plaintiff claims Benson tried multiple times to have him issued false disciplinary reports.  As already explained, Plaintiff has no right which protects him from being charged with a disciplinary offense.  Freeman, supra.  Accordingly, even if the actions of Defendants resulted in false disciplinary action being taken against him, Plaintiff's claim against them is not cognizable because he has no constitutional protection from being wrongly charged with a disciplinary offense.  Accordingly, Plaintiff claims regarding false disciplinary reports should be dismissed with prejudice as frivolous.

**Claim #10**

**Equal Protection Claim**

Plaintiff claims that on January 16, 2009, Benson and other inmates attempted to have him placed on lock-down in order to receive disciplinary reports.

Plaintiff has named individual prison officials as defendants and is therefore required to give factual details regarding his alleged constitutional rights violations. Plaintiff has failed to do so. Accordingly, these claims should be dismissed for failure

to state a claim on which relief may be granted.

**Due Process and Equal Protection Claims**

Plaintiff claims that on January 19, 2009, Arnold and Goodwin denied him release from the working cell block without giving a reason.  This is not a claim that this Court can resolve.  Federal courts should not, under the guise of enforcing constitutional standards, assume the superintendence of state prison administration.  See Jones v. Diamond, 636 F.2d 1364, 1368 (5th Cir. 1981) (en banc) (overruled on other grounds). Thus, this Court accords state prison administrators wide-ranging deference to adopt and to execute policies and practices that are needed to maintain and preserve order, discipline and security in prison.  See Bell v. Wolfish, 441 U.S. 520, 547 (1979).

The classification of prisoners is such a practice that is left to the discretion of prison officials.  See McCord v. Maggio, 910 F.2d 1248, 1250 (5th Cir. 1990).  "It is well settled that '[p]rison officials must have broad discretion, free from judicial intervention, in classifying prisoners in terms of their custodial status'." McCord, 910 F.2d at 1250 (quoting Wilkerson v. Maggio, 703 F.2d 909 (5th Cir. 1983)).

In Louisiana, the classification of prisoners is the duty of the Department of Corrections and an inmate, such as Plaintiff, has no right to a particular classification. In addition, "speculative, collateral consequences of prison administrative decisions do not create constitutionally protected liberty interests." Luken v. Scott, 71 F.3d 192, 193 (5th Cir. 1995) (citing Meachum v. Fano, 427 U.S. 215, 299 n.8, 96 S. Ct. 2532, 2540 n.8 (1976)). Thus, the prison officials' decision to leave Plaintiff in the working cell

block and the resulting consequences of such decision do not give rise to constitutionally protected liberty interests.  Plaintiff's claims with respect to his classification are frivolous because they lack an arguable basis in law and in fact, and they should be dismissed with prejudice as frivolous.

**Claim #11**

**Property Claims**

Plaintiff claims Goodwin, Turner, and Arnold conspired to steal his property.

As explained above, Louisiana law provides Plaintiff the opportunity to seek redress for his loss, whether intentional or negligent.  See La. Civ. Code art. 2315. Accordingly, Plaintiff has failed to state a claim cognizable under Section 1983.

**CLAIMS AGAINST INMATES**

Plaintiff names the following inmates as Defendants: Randall Basko, Shannon Stewart, Johnnie Johnson, Edward Timmons, Jimmy Peck, Leon Horne, Frederick Harris, Terrance Prudhome and Kerry Wasksom.  Plaintiff does not allege that these inmates were acting under the color of state law.  Section 1983 prescribes redress for conduct by any person who, under color of state law, acts to deprive another person of any right, privilege, or immunity secured by the Constitution and laws of the United States. See 42 U.S.C. § 1983.  A plaintiff in a civil rights suit must show that the conduct of which he is complaining was committed by a person acting under color of state law. Plaintiff has not alleged any action that would give rise to the defendants being state actors for purposes of Section 1983.  As such, Plaintiff's civil rights claims against

defendants Randall Basko, Shannon Stewart, Johnnie Johnson, Edward Timmons, Jimmy Peck, Leon Horne, Frederick Harris, Terrance Prudhome and Kerry Wasksom should be dismissed as frivolous.

## CONCLUSION

Because Plaintiff filed this proceeding in forma pauperis ("IFP"), if this court finds Plaintiff's complaint to be frivolous, it may dismiss the complaint as such at any time, before or after service of process, and before or after answers have been filed.  See 28 U.S.C. § 1915(e); Green v. McKaskle, 788 F.2d 1116, 1119 (5th Cir. 1986); Spears v. McCotter, 766 F.2d 179, 181 (5th Cir. 1985).  District courts are vested with extremely broad discretion in making a determination of whether an IFP proceeding is frivolous and may dismiss a claim as frivolous if the IFP complaint lacks an arguable basis either in law or in fact.  See Hicks v. Garner, 69 F.3d 22 (5th Cir. 1995); Booker v. Koonce, 2 F.3d 114 (5th Cir. 1993); Neitzke v. Williams, 490 U.S. 319, 109 S.Ct. 1827 (1989).

For the reasons heretofore stated, it is recommended that the following claims be **DISMISSED WITH PREJUDICE** as frivolous under 28 U.S.C. § 1915(e): Claim #1 - retaliation and equal protection; Claims #2 and #5 - administrative remedy procedure, false disciplinary reports, retaliation, and equal protection; Claim #3 - false disciplinary reports, retaliation, discrimination, and property; Claim #4 - due process; Claim #7 - administrative remedy procedure; Claim #8 - inmate attack; Claim #9 - prescribed and false disciplinary report; Claim #10 - equal protection and due process; Claim # 11 - Property; and Claims Against Inmate Defendants Randall Basko, Shannon Stewart,

Johnnie Johnson, Edward Timmons, Jimmy Peck, Leon Horne, Frederick Harris, Terrance Prudhome and Kerry Wasksom.

It is further recommended that Plaintiff's remaining Claims #2 and #5 and Claim #3 are **DISMISSED WITH PREJUDICE** as frivolous pursuant to Section 1915(e) until such time as the Heck conditions are met.

It is further recommended that Claim #1 - misprision of felony and Claim #6 - equal protection rights of employees be dismissed without prejudice for lack of standing.

## OBJECTIONS

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objection within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendations set forth above, within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking, on appeal, the proposed factual findings and legal conclusions that were accepted by the district court and that were not objected to by the aforementioned party.  See Douglas v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

Page 28 of  29

**THUS DONE AND SIGNED**, in chambers, in Shreveport, Louisiana, on this 27th day of March 2013.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE